Gayle M. Blatt (SBN 122048)
*gmb@cglaw.com*
Jeremy Robinson (SBN 188325)
*jrobinson@cglaw.com*
Jason C. Evans (SBN 272932)
*jevans@cglaw.com*
**CASEY GERRY SCHENK**
**FRANCAVILLA BLATT & PENFIELD LLP**
110 Laurel Street
San Diego, California 92101
(619) 238-1811 phone
(619) 544-9232 fax

Mark Ankcorn (166871)
*mark@ankcorn.com*
**ANKCORN LAW FIRM**
11622 El Camino Real, Suite 100
Del Mar, California 92130
(619) 870-0600 phone
(619) 684-3541 fax

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Jacqueline Selby**, on behalf of herself and all others similarly situated,<br>Plaintiff,<br><br>v.<br><br>LVNV Funding, et al.,<br><br>Defendants. | Case No. 13-cv-1383 BAS BLM<br><br>**Plaintiffs' Opposition to Motion to Stay Action**<br>(ECF No. 55)<br><br>Date: August 4, 2014<br>Courtroom: 4C<br><br>The Honorable Cynthia Bashant |

# TABLE OF CONTENTS

**Page(s)**

Introduction ..... 1

Statement of Relevant Facts ..... 2

A. Plaintiff alleges Allied made repeated calls to plaintiff's mobile without plaintiff's consent phone using a predictive dialer ..... 2

B. The FCC ruled that debt collection calls made using autodialers or predictive dialers are subject to the TCPA ..... 3

Argument ..... 5

A. The relevance of an FCC Ruling is speculative at best because Allied has not provided any information about the type of autodialer used in this case ..... 5

B. The court should deny the motion to stay because the FCC has already decided the questions raised ..... 6

1. The FCC Has Unequivocally Ruled that the TCPA Applies to Non-Telemarketing Calls to Cellular Telephones ..... 7

2. The FCC also has already determined that predictive dialers are regulated by the TCPA regardless of their "capacity" ..... 9

3. Any FCC "clarification" could be months or years away, and would not be retroactive ..... 12

C. The Fair Administration of Justice Weighs Against a Stay ..... 13

Conclusion ..... 14

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Beller v. Health & Hosp. Corp.*
703 F.3d 388, 391 (7th Cir. 2012)....................12

*Bowen v. Georgetown Univ. Hosp.*
488 U.S. 204, 208 (1988)....................12

*Brown v. MCI WorldCom Network Servs., Inc.*
227 F.3d 1166 (9th Cir. 2002)....................6

*Clark v. Times Warner Cable*
523 F.3d 1110, 1114 (9th Cir. 2008)....................6

*Griffith v. Consumer Portfolio Serv. Inc.*
838 F. Supp.2d 723, 725-26 (N.D. Ill. 2011)....................10

*Jamison v. First Credit Servs., Inc.*
290 F.R.D. 92, 101 (N.D. Ill. 2013)....................7, 9, 12

*Landis v. North American Co.*
299 U.S. 248, 255 (1936)....................13

*Leyva v. Certified Grocers of Cal., Ltd.*
593 F.2d 857, 863 (9th Cir. 1979)....................13

*Lockyer v. Mirant Corp.*
398 F.3d 1098, 111 (9th Cir. 2005)....................13

*Nat'l Commc'ns Ass'n*
46 F.3d at 225....................12

# TABLE OF AUTHORITIES (Continued)

**Cases (continued)** **Page(s)**

*Pimental v. Google, Inc.*
No. C-11-02585-YGR, 2012 WL 1458179, at *3 (N.D. Cal. April 26, 2012) ........ 6

*Robinson v. Midland Funding, LLC*
No. 10cv2261 MMA (AJB), 2011 WL 1434919, at *5 (S.D. Cal. April 13, 2011) ........ 6, 10

*Satterfield v. Simon & Schuster, Inc.*
569 F.3d 946, 951 (9th Cir. 2009) ........ 11

*Swope v. Credit Mgmt., LP*
No. 4:12CV832 CDP, 2013 WL 607830, at *4 (E.D. Mo. Feb. 19, 2013) ........ 6

*Syntek Semiconductor Co. Ltd. v. Microchip Tech. Inc.*
307 F.3d 775, 780 (9th Cir. 2002) ........ 6

*Tovar v. Midland Credit Mgmt.*
10CV2600 MMA MDD, 2011 WL 1431988 (S.D. Cal. Apr. 13, 2011) ........ 1, 4, 6, 7, 10

*Trainor v. Citibank, Nat. Ass'n*
CIV. 14-62 PAM/JSM, 2014 WL 2574527 (D. Minn. June 9, 2014) ........ 2, 12

## TABLE OF AUTHORITIES (Continued)

**Statutes and Other Authority** **Page(s)**

47 U.S.C. § 227(b)(1) .......... 8

47 U.S.C. § 227(b)(1)(A)(iii) .......... 3, 7, 8

47 U.S.C. § 227(b)(3) .......... 3

*In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991,* Report and Order, 18 FCC Rcd. 14014, at 14092-93, ¶ 134 (2003) .......... 4, 7, 8, 9, 10

*In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991,* 19 FCC Rcd. 19215, n.1 (2004) .......... 9

*In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991,* Declaratory Ruling, 23 FCC Rcd. 559 (2008) .......... 1, 4, 7, 8, 11

*In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991,* Declaratory Ruling, 27 FCC Rcd. 15391, at ¶ 2, n.5 (2012) .......... 4

**Introduction**

Allied Interstate's motion to delay this case until some guessed-at future FCC action suffers from a number of fatal defects. First, Allied's professed concern about how the FCC defines an auto dialer's "capacity" under the TCPA is a non-issue. Allied has not identified the type of autodialer it used to harass Jacqueline Selby and other class members, so an FCC ruling, assuming there will be one, will not impact this case. Certainly it is not grounds for a stay.

Second, while Allied parrots language in industry petitions about excluding "non-telemarketing" calls from the TCPA's protections, nothing suggests the FCC will—or even could—rewrite the statutory scheme like the industry wants. To be clear, and contrary to Allied's soft-peddling, the industry is not asking for a "clarification" of the FCC's interpretation; the FCC has already ruled that debt collectors must comply with the TCPA. *See*, *In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, Declaratory Ruling, 23 FCC Rcd. 559 (2008) ("*2008 Declaratory Ruling*") ¶ 9; *Tovar v. Midland Credit Mgmt.*, 10CV2600 MMA MDD, 2011 WL 1431988 (S.D. Cal. Apr. 13, 2011) ("The FCC ruled predictive dialers used by debt collectors fall within the meaning of autodialers, thereby refusing to carve out an exception for debt collectors.")

Instead, the industry has (once again) demanded a complete rewrite of the TCPA under the guise of a new regulatory definition of autodialer "capacity." But cramming into that definition a sweeping exclusion for harassing debt collection messages and other "informational calls" would be an extraordinary abuse of syntax and would have the FCC overturning codified federal law. Quite simply, an autodialer's "capacity" to dial stored numbers bears not the slightest relationship to *type of call* being made.

Third, and finally, as Allied's own choice of words shows, no one has any idea when the FCC will take any action or what that action will be. *See*, Doc. 55-1, p.2 ("clarification from the FCC is expected to rule (*sic*) on these issues soon"); p. 6 ("[T]he FCC has *indicated* that it *may* issue a decision regarding the CI Petition …") (emphasis added). Indeed, "given that this issue has been pending before the FCC for more than four years, when that new decision will issue is anyone's guess." *Trainor v. Citibank, Nat. Ass'n*, Case No. 14-cv-62 PAM, 2014 WL 2574527 (D. Minn. June 9, 2014). As such, the motion should be denied.

## Statement of Relevant Facts

### A. Plaintiff alleges Allied made repeated calls to plaintiff's mobile without plaintiff's consent phone using a predictive dialer

Allied is a debt collector who services accounts across the country for clients including defendants LVNV Funding, LLC, Sherman Financial Group, LLC, and Resurgent Capital Services, LP. FAC, ¶¶ 5-8 (Dkt. No. 37). Collectively, these defendants employ hundreds of persons at various call centers throughout the country and overseas. These calling centers use automatic telephone dialing systems and computerized account information to track, record, and maintain the millions of accounts serviced by the defendants. FAC, ¶ 9.

Around April 30, 2013, Allied began to make harassing calls to plaintiff Jacqueline Selby's mobile phone using an auto dialer, even though she never gave consent for Allied to place such calls to her. *Id*. at ¶¶ 13-14. Over the next few months, Allied made more than forty calls at different times to Selby's mobile phone in an effort to collect on a debt LVNV,

Resurgent, or Sherman claim to now own. *Id*. at ¶ 15. Allied and all other defendants are strangers to Selby—she has never engaged in any communications or business transactions with them. *Id*. at ¶ 21. None of the defendants were parties to the original debt or are affiliates of the original creditor, believed to be non-party Chase Bank USA, N.A. *Id*.

Selby filed this action on her own behalf and on behalf of a Class of similarly situated individuals to secure Class member remedies provided for in 47 U.S.C. § 227(b)(3) and to enjoin defendants from continuing to violate the TCPA. FAC, ¶¶ 29-39.

Plaintiff proposes the Court certify a Class as follows:

> All persons within the United States who, within four years of the filing of this action both (1) received an non-emergency telephone call from Allied when acting on behalf of or servicing a debt belonging to LVNV, Sherman Financial Group, and/or Resurgent, where the call was placed to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice and (2) did not provide the cellular telephone number during the transaction that resulted in the debt owed. Id. ¶ 30.

## B. The FCC ruled that debt collection calls made using autodialers or predictive dialers are subject to the TCPA

In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints about telemarketing practices. Among other things, the TCPA regulates the use of automated telephone equipment or "autodialers." Section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any non-emergency call to a wireless number without the prior express consent of the called party.

In 2003, the FCC ruled that a predictive dialer[1] is "automatic telephone dialing equipment" under the TCPA. *See In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, Report and Order, 18 FCC Rcd. 14014, at 14092-93, ¶ 134 (2003) ("*2003 TCPA Order*"). In 2008, the FCC confirmed that debt collection calls to a wireless phone using an automatic or predictive dialer—like the ones plaintiff alleges Allied made here—are prohibited under the TCPA absent "prior express consent" of the called party. *In re Rules& Regs. Implementing the Tel. Consumer Prot. Act of 1991*, Declaratory Ruling, 23 FCC Rcd. 559 (2008), ¶ 9; *see also Tovar v. Midland Credit Mgmt.*, 10-cv-2600 MMA, 2011 WL 1431988 (S.D. Cal. Apr. 13, 2011) ("The FCC ruled predictive dialers used by debt collectors fall within the meaning of autodialers, thereby refusing to carve out an exception for debt collectors.")

The FCC again reiterated that predictive dialers are subject to the TCPA in a 2012 declaratory ruling, noting that the agency has "emphasized" that the definition of an autodialer under the TCPA "covers any equipment that has the specified *capacity* to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from callings lists." *In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, Declaratory Ruling, 27 FCC Rcd. 15391, at ¶ 2, n.5 (2012) (emphasis in original).

The import of these rulings is that Allied and the various other

---

[1] A predictive dialer is a machine or program that automatically dials phone numbers from a pre-programmed list and connects the recipient of the call to an agent for the caller.

defendants finding themselves subject to suit under the TCPA are not trying to get the FCC to "clarify" its regulations. The regulations are unambiguous. What the industry wants is for the FCC to reverse its earlier rulings and completely revise the TCPA.

## Argument

### A. The relevance of an FCC ruling is speculative at best because Allied has not established what type of autodialer was used to call plaintiff

To start with, there is no basis for Allied's claim that a stay is justified here because the FCC might revise its definition of "capacity" under the TCPA and clarify "whether equipment that does not possess to (*sic*) the current capacity to store or produce randomly or sequentially generated numbers constitutes and ATDS." (Def. Memorandum, Dkt. 55-1, p. 11-12.) That is not an issue in this case.

To date, there has been no evidence produced about the type of autodialers used by Allied or their "capacity." No one has made an issue of whether Allied's autodialers can dial random or sequential numbers without modification, and no discovery has been conducted on that point. Indeed, Allied was only added as a defendant with the filing of the Second Amended Complaint on May 23, 2014. Allied may counter that, eventually, Selby and the other class members may have to prove Allied's autodialers fall within the ambit of the TCPA. Perhaps. But certainly that is no reason to stay this case now and await a possible agency determination of a matter that has not even become a point of contention.

**B. The court should deny the motion to stay because the FCC has already decided the questions raised**

Allied seeks a stay under the "primary jurisdiction" doctrine. But that reach of that doctrine is limited. *Clark v. Times Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). It does not "require that all claims within an agency's purview be decided by the agency." *Syntek Semiconductor Co. Ltd. v. Microchip Tech. Inc.*, 307 F.3d 775, 780 (9th Cir. 2002) (citing *Brown v. MCI WorldCom Network Servs., Inc.*, 227 F.3d 1166 (9th Cir. 2002)). Rather, it is used by the courts "to allocate *initial* decisionmaking responsibility between agencies and courts where such [jurisdictional] overlaps and potential for conflict exist." *Id.* (emphasis added; internal quotations and citations omitted).

Accordingly, when a government agency has already ruled on an issue, as the FCC has here, a motion to stay is improper and should be denied. *See, e.g., Tovar v. Midland Credit Mgmt.*, No. 10-cv-2600 MMA (MDD), 2011 WL 1431988, at *4 (S.D. Cal. April 13, 2011) (denying motion to stay pending FCC action, noting that the issues "are not ones of first impression" and that "the FCC has already determined... the [TCPA's] definition of 'automatic telephone dialing system' includes 'predictive dialers'"); *Robinson v. Midland Funding, LLC*, No. 10-cv-2261 MMA (AJB), 2011 WL 1434919, at *5 (S.D. Cal. April 13, 2011) (same); *Pimental v. Google, Inc.*, No. 11-cv-2585 YGR, 2012 WL 1458179, at *3 (N.D. Cal. April 26, 2012) (denying motion to stay, noting that "Defendants do not dispute that the courts and the FCC have interpreted these terms in the past"); *Swope v. Credit Mgmt., LP*, No. 4:12-cv-832 CDP, 2013 WL 607830, at *4 (E.D. Mo. Feb. 19, 2013) (denying motion to stay, noting that the "FCC has already considered the particular issues posed by the petition at least twice" and

"[b]oth times, [the FCC] has held that predictive dialers are considered automatic telephone dialing systems subject to the TCPA"); *Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92, 101 (N.D. Ill. 2013) (denying motion to stay because "the FCC has already ruled that a predictive dialer constitutes automatic telephone dialing equipment three times").

And that is precisely the case here. The two issues Allied claims justify a stay—(1) whether the TCPA applies to non-telemarketing calls to wireless telephones; and (2) whether predictive dialers that call lists of numbers rather than random or sequential numbers constitute autodialers subject to the TCPA—are not issues of first impression. On the contrary, they are the subject of several existing FCC rulings. *See*, *e.g.*, *Tovar, supra* (S.D. Cal. Apr. 13, 2011) ("The FCC ruled predictive dialers used by debt collectors fall within the meaning of autodialers"); *Jamison, supra,* (N.D. Ill. 2013) ("the FCC has already ruled that a predictive dialer constitutes automatic telephone dialing equipment three times"). Waiting for yet another FCC ruling "clarifying" these already-decided issues would only serve to unnecessarily delay resolution of this case.

**1. The FCC Has Unequivocally Ruled that the TCPA Applies to Non-Telemarketing Calls to Cellular Telephones**

The FCC has long recognized that the plain language of Section 227(b)(1)(A)(iii) of the TCPA prohibits the use of autodialers to make *any non-emergency call*, regardless of content, to a wireless number without the party's prior consent. *See generally 2003 TCPA Order*, ¶¶ 160-172 and *2008 Declaratory Ruling*, ¶ 11. In an order issued on July 3, 2003, the FCC confirmed that it is unlawful "to make *any call*" using an autodialer, recognizing that "such calls can be costly and inconvenient," particularly

given that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes used." *2003 TCPA Order* ¶ 165 (emphasis in original; citing 47 U.S.C. § 227(b)(1)).

In 2008, the FCC reaffirmed that it is unlawful to make *any call* using an autodialer to any wireless telephone number. *See 2008 Declaratory Ruling*. The *2008 Declaratory Ruling* was issued in response to a petition by ACA International, an international trade organization of credit and collections companies, that sought "clarification that the prohibition against autodialed or prerecorded calls to wireless telephone numbers... does not apply to creditors and collectors when calling wireless telephone numbers to recover payment[.]" *Id*. ¶ 8. The FCC rejected ACA's assertion that the use of autodialers by creditors to attempt to recover payments is not governed by the TCPA. *Id*. Instead, the FCC reiterated "that the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number," noting that "this prohibition applies *regardless of the content of the call*, and is not limited only to calls that constitute 'telephone solicitations.' " *Id*. ¶ 11 (emphasis added).

ACA International is the petitioner in the most-recent request for rulemaking, filed January 31, 2014. (Dkt. 56-9.) Allied is a member of that industry trade group and has been since 2000. (ACA International member directory, available at www.acainternational.org/memberdirectory.aspx (accessed July 21, 2014)). Having failed at least twice before to get its members an exemption from federal law, ACA now seeks a third bite at the apple. The Court should see these petitions and this motion for what they really are: an attempt to circumvent the democratic, legislative process by

lobbying regulators.[2]

Despite the FCC's many rulings, Allied maintains a stay is warranted in light of three petitions to the FCC, which ask the agency to once again decide whether the TCPA applies to non-telemarketing calling activities. Because the FCC has already decided this issue, Allied's assertion that a stay is warranted to await decisions on the CI, GroupMe and YouMail Petitions should be rejected.

Further, it is not at all clear the FCC *could* exempt "non-telemarketing" calls from the TCPA even if it wanted to. The vehicle by which the industry wants the FCC to exclude debt collection calls is a revised definition of autodialer "capacity." *See*, Def. Memorandum, Dkt. 55-1, p. 13 ("neither the TCPA or the FCC has defined what capacity means—whether it includes non-telemarketing calls placed from equipment that lacks the current 'capacity' to store or produce random or sequentially generated numbers.")

Allied drops the phrase "non-telemarketing calls" into its discussion of "capacity" as though the reason for its inclusion is self-evident. It is anything but. Nowhere does Allied, or any of the industry petitioners for that matter, explain how the definition of "capacity" could possibly be

---

[2] The debt collection industry failed spectacularly in 2011 to amend the TCPA when HR 3035 was introduced in the House of Representatives, which sought to change the language of the statute to limit the definition to only systems that dial numbers randomly or sequentially. The bill was opposed by fifty-four attorneys general and a host of consumer rights groups. So extensive was the public opposition that the bill's authors took the highly unusual step of issuing a letter formally withdrawing the bill. Letter of Dec. 12, 2011 ("what we have learned is that there is no hope for this legislation.")

twisted in a way to encompass the purpose for which the call is being made. The two ideas are totally unrelated. As such, if the FCC took the action being requested, it would be re-writing the TCPA without the authority to do so.

**2. The FCC also has already determined that predictive dialers are regulated by the TCPA regardless of their "capacity"**

The FCC has also addressed, at least three times, whether predictive dialers are autodialers under the TCPA. *See Jamison*, 290 F.R.D. at 101 (citing *2003 TCPA Order* at ¶ 131; *In the Matter of Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 19 FCC Rcd. 19215, n.1 (2004) ("*2004 TCPA Order*"); *2008 TCPA Order* at ¶ 12). Indeed, this is why numerous courts have rejected similar motions to stay based on the primary jurisdiction doctrine. *See, e.g., Frydman v. Portfolio Recovery Associates, LLC*, No. 11-cv-524, 2011 WL 2560221 at *5 (N.D. Ill. June 28, 2011) (denying motion for stay that requested stay on primary jurisdiction grounds so FCC may decide whether debt collectors are exempt from FCC and whether predictive dialers are automated dialing systems within the meaning of the term in the TCPA); *Tovar*, 2011 WL 1431988, at *4 (rejecting motion to stay, in part, because FCC has already addressed that "predictive dialers used by debt collectors fall within the meaning of autodialers"); *Robinson*, 2011 WL 1434919 (same).

Allied's attempt to couch the argument in different terms by focusing on the purported lack of a definition for what "capacity" means under the TCPA does not require a new ruling from the FCC. The FCC made it clear in its *2003 TCPA Order* that a predictive dialer need not have the *present* capacity to randomly or sequentially generate telephone numbers to

constitute an autodialer within the ambit of the TCPA. *See 2003 TCPA Order*, ¶ 133. Rather, "the purpose of the requirement that equipment have the 'capacity to store or produce numbers to be called' is to ensure that the prohibition on autodialed calls not be circumvented." *Id*.

Allied's argument, and the arguments raised in the petitions by CI, GroupMe and YouMail, have already been considered and rejected. In fact, as the court noted in *Griffith v. Consumer Portfolio Serv. Inc.*, 838 F.Supp.2d 723, 725-26 (N.D. Ill. 2011) several companies argued in comments to the FCC "that predictive dialers fell outside the TCPA's scope because a list or database of actual customer telephone numbers is, by definition not randomly or sequentially generated." The FCC rejected these comments, concluding that "a predictive dialer falls within the meaning and statutory definition of 'automatic telephone dialing equipment' and the intent of Congress." *2003 TCPA Order*, ¶ 133.

Similarly, the Ninth Circuit Court of Appeals has stressed: "When evaluating the issue of whether equipment is ATDS, the statute's clear language mandates that the focus must be on whether the equipment has the *capacity* 'to store or produce telephone numbers to be called, using a random or sequential number generator.' " *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009) (emphasis in original). Accordingly, an autodialer "need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it." *Id*. That is, an autodialer need not have the *present* capability to randomly or sequentially generate telephone numbers to constitute an autodialer governed by the TCPA.

In its *2008 Declaratory Ruling*, the FCC once again responded to an argument by a petitioner identical to the argument raised by Defendant

here that because "debt collectors use predictive dialers to call specific numbers provided by established customers," a predictive dialer should "meet[] the definition of autodialer only when it randomly or sequentially generates telephone numbers, not when it dials numbers from customer telephone lists." *2008 Declaratory Ruling* ¶ 12. In rejecting this argument, the FCC reaffirmed that the use of autodialers to place calls to wireless numbers was "determined by Congress to threaten public safety and inappropriately shift costs to consumers." *2008 Declaratory Ruling* ¶ 14. The FCC concluded that to find that such calls "are permissible when the dialing equipment is paired with predictive dialing software and a database of numbers, but prohibited when the equipment operates independently of such lists, would be inconsistent with the avowed purpose of the TCPA and the intent of Congress in protecting consumers from such calls." *Id*. There is therefore no reason to stay this case to await a determination on petitions that ask the FCC to again determine whether predictive dialers that call lists of numbers constitute autodialers.

**3. Any FCC "clarification" could be months or years away, and would not be retroactive**

In *Jamison*, the court noted "[t]he defendants have not offered any evidence or argument to suggest that if the FCC were to change its position that change would apply retroactively to the pending litigation." 290 F.R.D. at 102; *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) (holding that agency regulations cannot be applied retroactively unless Congress has so authorized the administrative agency and the language of the regulations require it); *Beller v. Health & Hosp. Corp.*, 703 F.3d 388, 391 (7th Cir. 2012). The court therefore concluded that a change in the FCC's rules

would likely not affect the plaintiff's claims. *Id.*; *see also Frydman*, 2011 WL 2560221, at *7 (declining to refer case to FCC under doctrine of primary jurisdiction because any ruling would likely only be made on a prospective basis).

As in *Jamison*, Allied fails to explain how, if the FCC were to change its position, those changes would apply retroactively. Moreover, it is well recognized that "[a]gency decisionmaking often takes a long time and the delay imposes enormous costs on individuals, society, and the legal system." *Nat'l Commc'ns Ass'n*, 46 F.3d at 225. While Allied offers its "assumption" that the FCC "*may* issue a decision regarding the CI Petition imminently," there is no way to know for certain when the FCC will rule on any of the petitions. As noted in *Trainor v. Citibank, Nat. Ass'n*, 14-cv-62 PAM, 2014 WL 2574527 (D. Minn. June 9, 2014), "given that this issue has been pending before the FCC for more than four years, when that new decision will issue is anyone's guess." *See also, Frydman*, 2011 WL 2560221, at *7 ("[w]hether the FCC's ... process is completed this year, next year, or in the next century, the results of that process are likely of only limited utility for the Court to decide the issues in this case. Therefore, judicial economy will be served by proceeding with this case and letting the FCC's process run its own course.").

**B. The Fair Administration of Justice Weighs Against a Stay**

The Court's inherent authority to stay pending litigation is not without limits. *See Lockyer v. Mirant Corp.*, 398 F.3d 1098, 111 (9th Cir. 2005). Rather, a party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work a damage to some one else."

*Landis v. North American Co.*, 299 U.S. 248, 255 (1936). Thus, "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside" to await a ruling in another action. *Id.*; *see also Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979) ("A stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court.").

Allied has failed to even attempt to establish a sufficient case of hardship. As the *Lockyer* court noted, "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' " justifying a stay. Further, as set forth above, it is highly doubtful the FCC will reverse course on its rules on the scope of the TCPA.

## Conclusion

For the above reasons, Allied's motion to stay this litigation pending a ruling by the FCC should be denied.

Dated: July 21, 2014

**CASEY GERRY SCHENK FRANCAVILLA BLATT & PENFIELD, LLP**

/s/ Gayle M. Blatt
Gayle M. Blatt, Esq.

Dated: July 21, 2014

**ANKCORN LAW FIRM, PC**

/s/ Mark Ankcorn
Mark Ankcorn, Esq.