1 | Charles R. Messer (SBN 101094)
2 | messerc@cmtlaw.com
  | David J. Kaminski (SBN 128509)
3 | kaminskid@cmtlaw.com
4 | Stephen A. Watkins, (SBN 205175)
  | watkinss@cmtlaw.com
5 | CARLSON & MESSER LLP
6 | 5959 W. Century Blvd., Suite 1214
  | Los Angeles, CA  90045
7 | (310) 242-2200 Telephone
8 | (310) 242-2222 Facsimile
  | Attorneys for Defendant Allied Interstate, LLC

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jacqueline Selby, on behalf of herself and all others similarly situated,<br><br>                Plaintiff,<br><br>      vs.<br><br>LVNV Funding, LLC; Sherman Financial Group, LLC; Resurgent Capital Services, LP; Allied Interstate, LLC,<br><br>                Defendants. | Case No.: 13-cv-1383 BAS BLM<br><br>**REPLY MEMORANDUM IN SUPPORT OF MOTION TO STAY ACTION**<br><br>Hon.  Cynthia Bashant<br>Date: August 4, 2014<br>Courtroom: 4C |

# MEMORANDUM OF POINTS AND AUTHORITIES

I.  ARGUMENT

   A.  **The FCC Has Never Ruled on the Specific Issue of Capacity of an ATDS**

The FCC has never ruled on the issue of "capacity" of an ATDS. Despite this, Plaintiff cites various authorities for the proposition that the FCC has already ruled that a predictive dialer is an ATDS. *See In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd. 559 (2008) ("2008 Declaratory Ruling"), *In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, at 14092-93, ¶ 134 (2003) ("2003 TCPA Order"), *Tovar v. Midland Credit Mgmt.*, No. 10-cv-2600 MMA (MDD), 2011 WL 1431988, at *4 (S.D. Cal. April 13, 2011); *Robinson v. Midland Funding, LLC*, No. 10-cv-2261 MMA (AJB), 2011 WL 1434919, at *5 (S.D. Cal. April 13, 2011), *Jamison v. First Credit Servs. Inc.*, 290 F.R.D. 92, 101 (N.D. Ill. 2013), *Frydman v. Portfolio Recovery Associates, LLC*, 11 CV 524, 2011 WL 2560221 (N.D. Ill. June 28, 2011) and *Swope v. Credit Mgmt., LP*, No. 4:12-cv-832 CDP, 2013 WL 607830, at *4 (E.D. Mo. Feb. 19, 2013).

Upon this premise, Plaintiff attempts to assert either (1) the capacity of a predictive dialer is irrelevant to establishing it as an ATDS because the FCC has already ruled that a predictive dialer is an ATDS; or (2) that the FCC's previous rulings imply that the all predictive dialers have the requisite capacity under the

TCPA. Neither assumption (Opposition at 7:3-12) has merit.

The FCC has never stated that the issue of "capacity" can be divorced from the definition of an ATDS, and none of its previous rulings assert that a determination of capacity is not required to ascertain if a specific predictive dialer constitutes an ATDS. Such a construction would be counter to Ninth Circuit precedent. As set forth in *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009), "When evaluating the issue of whether equipment is an ATDS, the statute's clear language mandates that the focus must be on whether the equipment has the capacity "to store or produce telephone numbers to be called, using a random or sequential number generator."

The Western District of Washington in *Gragg v. Orange Cab Co., Inc.*, C12-0576RSL, 2014 WL 494862 (W.D. Wash. Feb. 7, 2014), *reconsideration denied* (Feb. 28, 2014) refused to follow Plaintiff's apparent proposal that the Court should assume that a device alleged to be a predictive dialer has the requisite capacity, without undertaking a capacity analysis. Instead, the court performed an analysis of whether the equipment had "present, not potential, capacity to store, produce, or call randomly or sequentially generated telephone numbers," as well as whether it had the capacity to dial lists of numbers without human intervention. *Id.* at *3. Plaintiff's attempt to "read out" of the statute the capacity to use a "random or sequential number generator," by citing to *Griffith v. Consumer Portfolio Serv.*,

*Inc.*, 838 F. Supp. 2d 723 (N.D. Ill. 2011)(Opposition at 11:7-14) lacks merit. *See Ibey v. Taco Bell Corp.*, 12-CV-0583-H WVG, 2012 WL 2401972 at *3 (S.D. Cal. June 18, 2012)(granting motion to dismiss where the plaintiff "Plaintiff neither specifies that the device has the capacity to store or produce telephone numbers nor that the system uses a random or sequential number general to text message the numbers").

In this regard, Plaintiff's argument ignores the specific issue of the definition of "capacity" raised by the TCPA petitions and whether it includes both "present" and "potential" capacity. As stated by the District of Kansas in pertinent part:

> "Plaintiff argues that the FCC has issued several orders and rulings on the general topic of whether predictive dialers meet the ATDS definition, and all have concluded that they do. But none of these orders has addressed the specific "capacity" question raised by defendant, as well as by Communication Innovators and YouMail. Thus, the FCC has not decided yet the precise, narrow question relevant here."

*Higgenbotham v. Diversified Consultants, Inc.*, 13-2624-JTM, 2014 WL 1930885 at *3 (D. Kan. May 14, 2014); *Mendoza v. UnitedHealth Grp. Inc.*, 13-1553 PJH, 2014 WL 722031 at *3 (N.D. Cal. Jan. 6, 2014. As the FCC has not yet ruled on this specific issue whether the capacity of an ATDS includes potential and present capacity, this favors granting Allied's Motion.

2. **Plaintiff Put the Capacity of Allied's ATDS at Issue in this Litigation**

Plaintiff disingenuously claims that "No one has made an issue of whether

Allied's autodialers can dial random or sequential numbers without modification, and no discovery has been conducted on that point." (Opposition at 5:17-20) Plaintiff's Second Amended Complaint specifically alleges that "Each of the calls were made by means of an automatic telephone dialing system as defined by the Federal Communications Commission, because the system(s) had the capacity to store or produce telephone numbers to be called and/or the capacity to dial numbers without human intervention." (SAC, ¶15)

Allied denied these allegations in its Answer on the basis of insufficient information (Allied Answer at ¶ 15, Dkt. No. 51), in part due to the current dispute over the scope of capacity. Therefore, the issue of capacity has been put at issue in this litigation. Moreover, in clarifying "capacity", the FCC could possibly state that actionable capacity includes present and some level of theoretical capacity, but there is no liability for theoretical capacity beyond a certain point. There must be some limits on capacity. *See Gragg*, 2014 WL 494862 at *6.("To hold otherwise would subject almost all sophisticated computers and cell phones to TCPA liability, a result Congress surely did not intend.") Therefore, by virtue of putting the capacity of Allied's ATDS at issue, the current FCC petitions are relevant.

**B.    The FCC Has Never Ruled on the Capacity of an ATDS Used in Debt Collection**

Despite Plaintiff's argument (Opposition at 7:20-28, 8, 9,10:1-4), the FCC has never decided the issue of capacity of an ATDS in the non-

telemarketing context. Plaintiff asserts that the concept of "non-telemarketing calls" and capacity of an ATDS are unrelated (Opposition at 9:16-20, 10:1-4), but this is not the case.

Both the CI and ACA Petition requests that the FCC clarify the definition of capacity of an ATDS ((CI Petition at 17, Dkt No. 55-1; ACA Petition at 5-12, Dkt. No. 55-9) and the CI Petition requests that FCC clarify the capacity of an ATDS in the context of debt collection. The ACA Petition asserted the benefits of targeted debt collection (ACA Petition at 4-5) and the FCC Petition notes that the FCC has previously distinguished between telemarketing and non-telemarketing calls in its rulemaking (CI Petition at 18)(citing In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 F.C.C. Rcd. 1830, 1831 (2012)). If the FCC is already addressing the scope of "capacity" pursuant to petitions before the FCC, it makes sense to clarify the scope of the reach of the clarified ATDS definition (confined to telemarketing calls or beyond) at the same time.

In further support of a stay on these grounds are *Hurrle v. Real Time Resolutions, Inc.*, C13-5765 BHS, 2014 WL 670639 (W.D. Wash. Feb. 20, 2014) and *Passero v. Diversified Consultants, Inc.*, 13-CV-338C, 2014 WL 2257185 (W.D.N.Y. May 28, 2014), both of which held that this issue of the capacity of an ATDS used for debt collection currently before the FCC was sufficient to grant a

stay. As stated by Western District of Washington in *Hurrle*: "Telemarketing is one activity while collecting debt from known debtors seems to be a wholly separate activity," and "guidance on the 'capacity' of autodialing systems would further clarify the law that Hurrle seeks to enforce in this action." *Hurrle*, 2014 WL 670639 at *1. The FCC has not ruled on the specific issues raised by the FCC Petitions and Plaintiff's arguments in this regard lack merit.

### C. FCC Clarification is Needed to Revolve Split of Case Authority
#### 1. Courts Are Split on Notion of Capacity

Several court have limited the interpretation capacity to "present" capacity (*See Gragg, supra; Hunt v. 21st Mortgage Corp.*, 2:12-CV-2697-WMA, 2013 WL 5230061 at *3 (N.D. Ala. Sept. 17, 2013), while in *Griffith v. Consumer Portfolio Serv., Inc.*, 838 F. Supp. 2d 723, 727 n.1 (N.D. Ill. 2011), the Northern District of Illinois appeared to imply capacity could include being programmed "to dial numbers randomly or sequentially." Plaintiff cites *Satterfield,* 569 F.3d 946, 951 for the proposition that capacity means both present or potential, but the decision never specifies the limit of that notion. "If the regulation is unambiguous, its plain meaning controls unless such a reading would lead to absurd results." *United States v. Bucher*, 375 F.3d 929, 932 (9th Cir. 2004). As set forth in *Hunt*, to broadly construe capacity to mean "ability to be reprogrammed" would sweep in every iPhone in the country. See CI Petition at 17. *See also Gragg*, 2014 WL 494862 at *6. The only logical construction of "capacity" would require some

limit on "hypothetical capacity," which is clarification sought in the FCC Petition.

2.  **There is Uncertainty as to Scope of the TCPA with Respect to Debt Collection**

Plaintiff's Opposition fails to address the split in authority over the application of the TCPA to debt collection calls. As set forth in *Passero*, 2014 WL 2257185 at *2:

> [T]he court need look no further than the split of case law authority on the threshold issue as to whether the protective provisions of the TCPA even apply to debt collection calls. Compare Meadows v. Franklin Collection Service, Inc., 414 F. App'x 230, 235 (11th Cir.2011) (FCC has made clear that debt collection calls are subject to the TCPA's "established business relationship" and "commercial purpose" exemptions"), and Franasiak v. Palisades Collection, LLC, 822 F.Supp.2d 320 (W.D.N.Y.2011) (relying on FCC rulemaking decisions that debt collector's ATDS calls to non-debtor fall under TCPA's "commercial call exemption")…

*Id.* at *2.

The FCC seeks uniformity in its administration (*In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14064, para. 83 (2003). Given the clear split of authorities over the issues raised by the FCC Petitions, this favors granting of a stay. *See Davel Communs., Inc. v. Qwest Corp.*, 460 F.3d 1075, 1086 (9th Cir. 2006).

D.  **Plaintiff Ignores Two Separate Decisions That the FCC's Decision on the Relevant Petitions Should be "Relatively Soon."**

Plaintiff asserts that because that there is no way to know for certain when the FCC will rule on any of the petitions, Allied's Motion should be denied.

(Opposition at 13:12-13)  The District of New York in *Passero,* 2014 WL 2257185 at *3, and in *Mendoza v. UnitedHealth Grp. Inc.*, 13-1553 PJH, 2014 WL 722031 (N.D. Cal. Jan. 6, 2014) both held that they expect a decision on the pending petitions "relatively soon."  Moreover, the Glidetalk Petition (See Dkt. No. 56-5) and Professional Association for Customer Engagement Petition, CG Dkt. No. 02-278 (filed Oct. 18, 2013)( http://apps.fcc.gov/ecfs/document/view?id=7520958196) were both filed seeking an Expedited Rulemaking.

Plaintiff's concerns about delay could be ameliorated by the parties filing a status statement similar to that in *Mendoza* (2014 WL 722031 at *2)--"No later than six months from the date of this order, the parties shall file a status statement with the court, advising as to the FCC's progress on resolving these issues."

### E.     The Retroactivity of the FCC's Ruling Should Not Be an Issue

### 1.     An FCC Ruling on "Capacity" Would Be Interpretative and therefore issue of Retroactivity is Not Relevant

Citing *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) (Opposition at 12:20-26), Plaintiff asserts that agency regulations cannot be applied retroactively unless Congress has so authorized the administrative agency and the language of the regulations require it.  Because the regulation promulgated by the FCC merely interprets the substantive provisions of the Act, it does not present retroactivity concerns.  *See Gusman v. Comcast Corp.*, 13CV1049-GPC DHB, 2014 WL 2115472 at *4 (S.D. Cal. May 21, 2014)(holding that FCC Petitions in

that case "both petitions seek to 'clarify' the TCPA regulations at issue" and granting stay). *See also Manhattan Gen'l Equip. Co. v. Commissioner*, 297 U.S. 129, 135, 56 S.Ct. 397, 80 L.Ed. 528 (1936) (explaining that an agency ruling interpreting a statute "is no more retroactive in its operation than is a judicial determination construing and applying a statute to a case in hand"); *AT & T Commc'ns Sys. v. Pac. Bell*, 203 F.3d 1183, 1187 (9th Cir. 2000)(same).

In this case, the CI Petition and ACA petitions specifically state they seek to clarify the definition of capacity (CI Petition at 5). Therefore, Plaintiff's argument that Allied's Motion should be denied on the grounds that it improperly seeks retroactive relief or that it would require that the FCC rewrite the definition of capacity (Opposition at 9:9-15) lacks merit.

### 2. The FCC Can Make Its Rules Retroactive

In *Bradley v. Richmond School Board*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974), the U.S. Supreme Court held that "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary. The Ninth Circuit has not yet addressed the tension between *Bradley* and *Bowen*. *Raya v. Maryatt Indus.*, 829 F. Supp. 1169, 1172 (N.D. Cal. 1993). Surveying cases, the Northern District in *Raya* noted that "[M]ost of the cases in which the courts found retroactive application appropriate involved procedural or remedial

statutes, rather than statutes imposing new substantive obligations." *Id.*

The TCPA is a remedial statute. *Gager v. Dell Fin. Servs.*, LLC, 727 F.3d 265, 271 (3d Cir. 2013). In light of *Bradley and Raya*, the Court should still permit retroactive application of any FCC ruling.

### III. CONCLUSION

For the reasons set forth above, and in Allied's Motion, this Court should grant Allied's Motion and stay this case on the grounds of primary jurisdiction.

Dated: July 28, 2014                                          CARLSON & MESSER LLP

                                                              By:   /s/ David J. Kaminski
                                                                    Charles R. Messer
                                                                    David J. Kaminski
                                                                    Stephen A. Watkins
                                                                    Attorneys for Defendant Allied
                                                                    Interstate, LLC

{00020106;1}                                11                    REPLY MEMORANDUM
                                                                  IN SUPPORT OF MOTION TO STAY ACTION
                                                                           13-cv-1383 BAS BLM

## CERTIFICATE OF SERVICE

I hereby certify that on this **28th** day of **July, 2014**, a true and accurate copy of the foregoing **REPLY MEMORANDUM IN SUPPORT OF MOTION TO STAY ACTION** with the Clerk of Court using the ECF system which will send notification of such filing to the following

E-mail address(es):

mark@markankcorn.com

                                            /s/David J. Kaminski
                                            David J. Kaminski