UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQUELINE SELBY, *on behalf of herself and all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>LVNV FUNDING, LLC, *ET AL.*,<br><br>Defendants. | Case No.  13-cv-1383-BAS(BLM)<br><br>**ORDER DENYING DEFENDANT'S MOTION TO STAY**<br><br>(ECF No. 55) |

Presently before the Court is a motion to stay this action filed by Defendant Allied Interstate, LLC ("Allied") pursuant to the doctrine of primary jurisdiction and the Court's inherent authority.  (ECF No. 55.)  Allied moves to stay this action on the grounds the Federal Communication Commission ("FCC") "is currently considering petitions for declaratory relief or rulemaking pursuant to its Congressionally-vested authority to adopt regulations implementing the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. ['TCPA']", and these issues will be dispositive of the allegations in the Second Amended Complaint ("SAC") filed by Plaintiff Jacqueline Selby ("Plaintiff").  (*Id*. at p. 2.)

The Court finds this motion suitable for determination on the papers

submitted and without oral argument. *See* Civ. L.R. 7.1(d)(1). For the reasons set forth below, the Court **DENIES** Allied's motion to stay the case.

## I. BACKGROUND

On May 23, 2014, Plaintiff filed her SAC in this putative class action against defendants Allied, LVNV Fundings, LLC ("LVNV"), Sherman Financial Group, LLC ("Sherman"), and Resurgent Capital Services, LP ("Resurgent") (collectively, "Defendants") alleging negligent and willful violations of the TCPA. (ECF No. 40.) Plaintiff alleges Allied "provides debt collection services nationwide by, among other things, contacting borrowers by telephone, on behalf of defendants LVNV, Sherman, and/or Resurgent." (*Id*. at ¶ 8.) Plaintiff further alleges that LVNV, Sherman, and Resurgent "are all part of a joint business enterprise" and the "joint business enterprise contracts with Allied to service and collect on debts owned by the enterprise." (*Id*. at ¶¶ 8, 10-11.)

In order to provide the debt collection services, Plaintiff alleges Defendants use call centers throughout the country and overseas which "use automatic telephone dialing systems." (*Id*. at ¶ 9.) Plaintiff specifically alleges "[e]ach of the calls were made by means of an automatic telephone dialing system as defined by the [FCC], because the system(s) had the capacity to store or produce telephone numbers to be called and/or the capacity to dial numbers without human intervention." (*Id*. at ¶ 15.) Plaintiff further alleges that "Allied is responsible for all calls it placed in violation of the TCPA." (*Id*. at ¶27.) Allied denies that it uses an automatic telephone dialing system ("ATDS") for its services. (ECF No. 51 at ¶ 9.)

Currently, there are several petitions pending before the FCC requesting that the agency clarify when a dialing system qualifies as an ATDS under the TCPA. (Mot. at pp. 4-8.) The TCPA defines an "automatic telephone dialing system" as "equipment that has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such

numbers." 47 U.S.C. § 227(a)(1). The petitions urge the FCC to clarify that a dialing system's "capacity" under the TCPA means the system's *present* capacity at the time of the call and not its *potential* capacity with further modifications. (Mot. at pp. 4-8.) One petition, from Communications Innovators, filed on June 7, 2012, also requests the FCC clarify that only telemarketing calls, not debt-collection calls, are subject to the TCPA. (*Id.* at pp. 4-9.)

## II.   STATEMENT OF LAW

"The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). Primary jurisdiction is a "prudential" doctrine that permits a court to stay or dismiss a case if an "otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch." *Id.* (citing *Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 780 (9th Cir. 2002)). "[I]t is to be used only if a claim requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency, and if protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme." *Id.* (internal citations and quotation marks omitted).

"No fixed formula exists for applying the doctrine of primary jurisdiction." *Davel Commc'ns, Inc. v. Qwest Corp.*, 460 F.3d 1075, 1086 (9th Cir. 2006) (quoting *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956)). Ninth Circuit courts, however, weigh four factors in determining whether to apply the doctrine:

> (1) [whether] the issue is not "within the conventional experiences of judges," (2) [whether] the issue "involves technical or policy considerations within the agency's particular field of expertise," (3) [whether] the issue "is particularly within the agency's discretion," or (4) [whether] "there exists a substantial danger of inconsistent rulings.

*Maronyan v. Toyota Motor Sales, U.S.A., Inc.*, 658 F.3d 1038, 1048-49 (9th Cir. 2011) (quoting *Brown v. MCI WorldCom Network Servs., Inc.*, 277 F.3d 1166, 1172-73 (9th Cir. 2002)).

## III.   DISCUSSION

Allied argues that a stay is warranted in this matter because the FCC's clarification of two issues—(1) whether dialing equipment must have the current capacity to generate and dial random or sequential numbers in order to be an ATDS and (2) whether the TCPA applies to non-telemarketing calling activity such as debt collection calls—could dispose of Plaintiff's complaint.  (Mot. at p. 1.)  Plaintiff contends in response that the relevance of any FCC ruling is speculative since Allied has not provided any information about the type of autodialer it used to call Plaintiff.  (ECF No. 60 ("Opp.") at p. 5.)  Plaintiff further contends that a stay is improper since the FCC has already decided the issues Allied raises in its motion.  (*Id.* at p. 6.)

Both the FCC and several Ninth Circuit courts have commented at length on the issues Allied wants resolved before this case should proceed.  *See Jordan v. Nationstar Mortg. LLC*, No. 14–cv–00787–WHO, 2014 WL 5359000, at *4-8, 12 (N.D. Cal. Oct. 20, 2014) (detailing FCC and Ninth Circuit decisions regarding the definition of capacity under the TCPA and whether the statute applies to debt collection calls).  The Ninth Circuit has concluded that the statutory language of the TCPA is "clear and unambiguous."  *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009).  In *Satterfield*, the Ninth Circuit stated that "[w]hen evaluating the issue of whether equipment is an ATDS, the [TCPA's] clear language mandates that the focus must be on whether the equipment has the *capacity* to store or produce telephone numbers to be called, using a random or sequential number generator."  *Id.* (emphasis in original, internal quotation marks omitted).  The court then considered testimony regarding the capacity of the system in question and determined there was a genuine issue of material fact precluding

summary judgment. *See Id.*

The Ninth Circuit again dealt with the "capacity" issue in *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012), *cert. denied,* 133 S.Ct. 2361 (2013). The defendant in *Meyer* claimed that its dialing equipment did not have the "present capacity to store or produce numbers using a random or sequential number generator." *Id.* However, the defendant did not dispute that it used predictive dialers and that "its predictive dialers have the capacity described in the TCPA." *Id.* Citing its decision in *Satterfield* and a prior FCC ruling determining that predictive dialers are ATDSs under the TCPA, the Ninth Circuit found the defendant's predictive dialing equipment fell squarely within the FCC's definition of "automatic dialing system." *Id.*

The FCC's determination that predictive dialing systems qualify as ATDSs turned on the definition of capacity. *See In re the Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 18 FCC Rcd. 14014, 14091-92 (2003). The FCC noted that, despite changes in dialing technology, the "basic function" of prohibited systems "has not changed—the *capacity* to dial numbers without human intervention." *Id.* (emphasis in original).

The Northern District of California recently denied a stay on facts nearly identical to those before this Court. *See Jordan*, 2014 WL 5359000, at *13. The defendant in *Jordan*, Nationstar, argued for a stay citing the same FCC petitions that Allied brings before the Court. *Id.* at *5-6. Moreover, as is the case here, Nationstar asserted that its dialing system lacks "the current capacity to perform the functions of an ATDS as defined in the TCPA," but did not assert that its equipment has the "potential capacity." *Id.* at *9. The district court found that the FCCs potential clarifications would not be needed to resolve the case, because, if Nationstar's assertions were true, its dialing system likely did not qualify as an ATDS. *Id.*

The *Jordan* court also relied on the fact that "the FCC and the Ninth Circuit

1  have already stated that an ATDS operates without human intervention, and
2  therefore any ruling by the FCC on that issue will not change the outcome of this
3  case." *Id.* Two petitions cited by Nationstar, and also cited by Allied, urge the
4  FCC to change the definition of ATDS to include the words "without human
5  intervention." *Id.* Therefore, any ruling by the FCC on these petitions would not
6  change the outcome of this action. *See id.*

7        Allied also moves for a stay based on the petition of Communication
8  Innovators seeking clarification on whether an ATDS used for debt collection can
9  incur liability under the TCPA. (Mot. at p. 8-9.) The FCC has already determined,
10 however, that debt collection calls are subject to the TCPA:

> With this ruling, however, creditors and debt collectors may use predictive dialers to call wireless phones, provided the wireless phone number was provided by the subscriber in connection with the existing debt. We note, however, that where the subscriber has not made the number available to the creditor regarding the debt, we expect debt collectors to be able to utilize the same methods and resources that telemarketers have found adequate to determine which numbers are assigned to wireless carriers, and to comply with the TCPA's prohibition on telephone calls using an autodialer or an artificial or prerecorded voice message to wireless numbers.

18 *In the Matter of Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*,
19 23 FCC Rcd 559, 567 (2008); *Tovar v. Midland Credit Mgmt.*, No. 10cv2600
20 MMA(MDD), 2011 WL 1431988, at *3 (S.D. Cal. Apr. 13, 2011) ("The FCC has
21 already issued a declaratory ruling stating debt collectors who make autodialed or
22 prerecorded calls to a wireless number are responsible for any violation of the
23 TCPA."). Moreover, courts in the Ninth Circuit have "consistently held that debt
24 collection calls are subject to TCPA liability." *Jordan*, 2014 WL 5359000, at *12
25 (citing cases). Furthermore, Communication Innovators withdrew its petition on
26 July 14, 2014. *Id.* at *6.

27       The primary jurisdiction doctrine may apply when a case requires resolution
28 of a particularly complicated issue or an issue of first impression. Since both the

FCC and the Ninth Circuit have ruled on the issues of capacity and debt collection call liability under the TCPA, the Court does not find it warranted to stay this case to await any possible clarifications.

Moreover, since Allied says nothing at all about its dialing system's capacity, the Court agrees with Plaintiff's argument that the relevance of any FCC ruling on the issue of capacity is speculative. Aside from denying it uses an ATDS, Allied provides no information about the system it employs to make debt collection calls. Allied simply asserts: "If the FCC concludes dialing equipment must have the current capacity to generate and dial random or sequential numbers, that would defeat Plaintiff's claims." (Mot. at p. 1-2.) Allied has not stated whether its system has even the *potential* capacity to store or produce randomly or sequentially generated numbers. If it does not, then a decision on the petitions currently pending before the FCC would not be determinative in this litigation.

Finally, Allied posits that the FCC has indicated it may rule on these issues "imminently." (*See* Mot. at p. 6.) To the contrary, the Northern District of California found "the evidence that an FCC ruling on the capacity issue is 'imminent' remains uncertain." *Jordan*, 2014 WL 5359000, at *9. The district judge in *Jordan* initially stayed those proceedings in September of 2014 to allow time for the FCC to respond to another district judge's letter requesting a status update on the pending petitions. *Id.* at *1. The FCC responded, "but gave no indication that it would resolve the matters raised by the petitions in the near term, *if ever*." *Id.* (emphasis added).

The Court finds the circumstances do not warrant a stay of the case at this time. The FCC and Ninth Circuit courts have dealt at length with the issues raised here. Further, the Court cannot know if the issues pending before the FCC will be determinative in this case without any understanding of Allied's dialing system. Lastly, no convincing evidence suggests the FCC will provide the clarifications Allied desires anytime soon.

IV.     CONCLUSION

In light of the foregoing, Allied's motion to stay is **DENIED**.  (ECF No. 55.)

**IT IS SO ORDERED.**

DATED:  March 30, 2015

Hon. Cynthia Bashant
United States District Judge