1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQUELINE SELBY, *on behalf of herself and all others similarly situated*, | Case No. 13-cv-01383-BAS(BLM) |
| Plaintiff, | **ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** |
| v. | **[ECF No. 103]** |
| LVNV FUNDING, LLC, *et al.*, | |
| Defendants. | |

Plaintiff Jacqueline Selby brings this putative class action against Defendants Allied Interstate, LLC ("Allied"); LVNV Funding, LLC ("LVNV"); Resurgent Capital Services, LP ("Resurgent"); and Sherman Financial Group, LLC ("Sherman") alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. (ECF No. 40.) Plaintiff now moves for certification of a proposed class pursuant to Federal Rule of Civil Procedure 23. (ECF No. 103.) Defendants oppose on the basis that Plaintiff has not satisfied several of Rule 23's prerequisites for class adjudication. (ECF No. 107.)

The Court finds this motion suitable for determination on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d). For the following reasons, the Court **DENIES** Plaintiff's Motion for Class Certification and Order Appointing Class Counsel (ECF No. 103).

# I.   BACKGROUND

## A.   Defendants' Debt Collection Enterprise

### 1.   Defendants' Structure

This putative class action arises out of debt collection phone calls made on behalf of an enterprise that purchases and collects on past-due consumer credit accounts. Three of the Defendants—Sherman, LVNV, and Resurgent—are related entities. (Second Amended Complaint ("SAC") ¶ 10; Henderson Decl. ¶ 5.) These Defendants' debt collection business begins when Sherman purchases past-due consumer credit accounts from various other entities such as the original creditor on the account, a prior debt collector, or a previous purchaser of the account. (SAC ¶ 6; Henderson Decl. ¶¶ 5, 7.) The acquired accounts involve credit transactions "between debtors and hundreds, if not more, of different original creditors in a variety of industries," such as phone companies and credit card companies. (Nyman Decl. ¶ 16.)

Next, Sherman transfers these credit accounts to LVNV. (Henderson Decl. ¶ 5.) Once the accounts have been transferred, LVNV retains the final related entity, Resurgent, to manage and oversee the debt collection efforts on the credit accounts. (*Id.*) Resurgent, in most instances, then engages third-party debt collection agencies to attempt to collect on the LVNV accounts. (*Id.*) The final Defendant, Allied, is one of the third-party debt collection agencies retained by Resurgent to collect on the LVNV accounts. (*Id.*; SAC ¶ 8.) Therefore, in short, Sherman purchases the credit accounts, LVNV holds the accounts, Resurgent manages collections on the accounts, and Allied is one of the collectors for the accounts.

### 2.   Defendants' Records

When Sherman purchases the consumer credit accounts from various sources, it receives data and other information regarding the accounts from the sellers. (Henderson Decl. ¶ 7.) "This information is transferred to LVNV and includes some,

– 2 –

but not all, of the account documents regarding the account." (*Id.*) The content of this information "varies from account to account, but often includes consumer name, address and telephone information, credit card statements, credit applications, terms and conditions applicable to the account, records of communications between the consumer and creditor, and other records relating to the account." (*Id.*) The scope of information that is available for a particular account fluctuates because of factors including the policies of the original creditor that owned the account, the type and age of the account, and whether there has been prior collection activity on the account. (*Id.* ¶ 8.) In other words, there is no uniform credit application or set of records for the accounts at issue. (*See id.*; Nyman Decl. ¶ 16.)

Among these records are credit applications and other records "that contain telephone numbers, including numbers identified as cell phones, and other contact information for the consumer associated with each account." (Henderson Decl. ¶ 10; *see also* Nyman Decl. ¶ 15 ("As for the information that Resurgent's records do contain, these records often include one or more telephone numbers for the debtor.").) To determine conclusively whether a particular account's records contain the consumer's cell phone number, Defendants' records and potentially those records still in possession of the original creditor or any prior owner of the credit account must be reviewed. (Henderson Decl. ¶ 16; Nyman Decl. ¶ 29.)

### 3.     Defendant Allied's Collection Efforts

Once Resurgent places accounts with Allied for collection, Allied attempts to collect on these accounts by contacting debtors by mail or phone. (Nyman Dep. 68:18–25.) When Allied makes contact with a debtor, Allied's collection agent generally records a summary of the conversation in the account notes. (Nyman Decl. ¶ 22.) Allied, for some accounts, also maintains call recordings of telephone conversations. (*Id.* ¶ 23.) Thus, to understand the content of a telephone conversation between Allied and a debtor, including whether the debtor consented to future

telephone calls, it is necessary to review the summary account notes on the debtor's account and search for and listen to the recording for the call, if available. (*Id.* ¶ 24.)

### B.     Plaintiff's Allegations

In November 2012, Plaintiff received a letter from Allied. (SAC ¶ 22.) This letter informed Plaintiff that LVNV had acquired a debt owed by Plaintiff to JP Morgan Chase Bank, N.A. (*Id.*) The letter also stated that the account had been placed with Allied for collection. (*Id.*)

On or about April 30, 2013, "Defendants began calling Plaintiff on her cellular telephone using an automatic telephone dialing system. At no time did she give her consent for Defendants to place such calls to her." (SAC ¶ 13.) Over the next few months, Allied placed more than forty calls at different times to Plaintiff's cellular telephone in an effort to collect on the debt. (*Id.* ¶ 14.)

By doing so, Plaintiff claims Allied violated the TCPA. (SAC ¶ 28.) She alleges LVNV, Sherman, and Resurgent also violated the TCPA because they are responsible for calls placed on behalf of debts owned by LVNV. (*Id.* ¶¶ 26–27.) Plaintiff alleges Defendants similarly violated the TCPA in calling other individuals' cell phones without their consent. (*Id.* ¶¶ 29–34.) Accordingly, she seeks to certify a proposed class defined as:

> All persons within the United States who, within four years of the filing of this action both (1) received an [sic] non-emergency telephone call from Allied when acting on behalf of or servicing a debt belonging to LVNV, Sherman, and/or Resurgent, where the call was placed to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice and (2) did not provide the cellular telephone number during the transaction that resulted in the debt owed.

(*Id.* ¶ 30.)

//

//

– 4 –

## II.   **LEGAL STANDARD**

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki,* 442 U.S. 682, 700–01 (1979)). Under Federal Rule of Civil Procedure 23, which governs class actions, the party seeking class certification must meet the four prerequisites of Rule 23(a)—numerosity, commonality, typicality, and adequacy—and at least one of the requirements of Rule 23(b). *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011). The party seeking class certification bears the burden of demonstrating that the Rule 23(a) and Rule 23(b) requirements have been met. *Dukes*, 564 U.S. at 351; *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Apart from the express requirements of Rule 23, federal courts have also held that a class must be "adequately defined and clearly ascertainable" to be certified. *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 679–80 (S.D. Cal. 1999).

District courts have broad discretion in deciding whether to certify a class. *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010). In exercising this discretion, a trial court must conduct a "rigorous analysis" to ensure the Rule 23 requirements have been satisfied. *Dukes*, 564 U.S. at 351. Although this analysis should not resolve the merits of the plaintiff's underlying claim, the court must consider the merits if the merits overlap with the Rule 23 requirements. *Id.*; *Comcast Corp. v. Behrend*, 569 U.S. ---, 133 S.Ct. 1426, 1432 (2013); *Ellis*, 657 F.3d at 980.

A district court reviewing a motion for class certification "is required to consider the nature and range of proof necessary to establish [the] allegations" of the complaint, even as it "is bound to take the substantive allegations of the complaint as true." *In re Coordinated Pretrial Proceedings in Petroleum Prod. Antitrust Litig.*, 691 F.2d 1335, 1342 (9th Cir. 1982) (citing *Blackie v. Barrack*, 524 F.2d 891, 901 n.7 (9th Cir. 1975)). The court need not accept conclusory or generic allegations regarding the suitability of the litigation for resolution through a class action. *Jordan*

*v. Paul Fin., LLC*, 285 F.R.D. 435, 447 (N.D. Cal. 2012). In determining whether Rule 23's requirements are satisfied, the court may consider evidentiary submissions of the parties. *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.*, 593 F.3d 802, 810 (9th Cir. 2010).

## III.   **DISCUSSION**

Defendants oppose class certification on multiple grounds, arguing that Plaintiff has failed to (1) set forth an objectively identifiable and ascertainable class, (2) satisfy Rule 23(b)(3)'s predominance and superiority requirements, or (3) demonstrate that she is an adequate class representative with claims that are typical of putative class members. (Opp'n 6–25.) Because the Court finds Rule 23(b)(3)'s predominance requirement is dispositive here, the Court focuses on this requirement and does not address Defendants' remaining arguments or the other prerequisites for class adjudication.

### A.   **Predominance**

Plaintiff seeks certification of a class under Rule 23(b)(3). (Mot. 17:1–2.) Therefore, in addition to satisfying Rule 23(a)'s requirements, Plaintiff must demonstrate under Rule 23(b)(3) that (1) common issues predominate over individual issues and (2) a class action is superior to other available methods for adjudicating this controversy. Fed. R. Civ. P. 23(b)(3); *Dukes*, 564 U.S. at 351.

The first of Rule 23(b)(3)'s requirements, predominance, "focuses on 'the relationship between the common and individual issues' and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998)). The focus of the predominance inquiry is not the presence or absence of commonality as it is under

1  Rule 23(a)(2). Instead, the predominance requirement ensures that common
2  questions "present a significant aspect of the case" such that "there is clear
3  justification"—in terms of efficiency and judicial economy—for resolving those
4  questions in a single adjudication. *Hanlon*, 150 F.3d at 1022. This requirement is
5  satisfied when a common nucleus of facts and law is the central feature of the
6  litigation, and when "Plaintiffs have shown that there are plausible classwide
7  methods of proof available to prove their claims." *Wolph v. Acer Am. Corp.*, 272
8  F.R.D. 477, 487 (N.D. Cal. 2011); *see also Hanlon*, 150 F.3d at 1022. However,
9  "[c]ommon questions do not predominate if the resolution of an overarching common
10  issue breaks down into an unmanageable variety of individual legal and factual issues
11  leading to an inordinate number of evidentiary hearings." *Kristensen v. Credit*
12  *Payment Servs.*, 12 F. Supp. 3d 1292, 1306 (D. Nev. 2014).

13      "Considering whether 'questions of law or fact common to class members
14  predominate' begins, of course, with the elements of the underlying cause of
15  action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). Here,
16  this action involves only claims brought under the TCPA. (SAC ¶¶ 40–47.) The Ninth
17  Circuit has stated "[t]he three elements of a TCPA claim are: (1) the defendant called
18  a cellular telephone number; (2) using an automatic telephone dialing system; (3)
19  without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs.,*
20  *LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012). There is disagreement, however, as to
21  whether either (a) the plaintiff has the burden to prove the absence of "prior express
22  consent" or (b) the defendant has the burden to show prior express consent was given.
23  *Compare Gossett v. CMRE Fin. Servs.*, --- F. Supp. 3d. ---, 2015 WL 6736883, at *
24  3 (S.D. Cal. 2015) (concluding the defendant has the burden to prove prior express
25  consent as an affirmative defense), *with Smith v. Microsoft Corp.*, 297 F.R.D. 464,
26  471 n.2 (S.D. Cal. 2014) (interpreting the Ninth Circuit's statement in *Meyer*
27  concerning the elements of a TCPA claim as placing the burden on the plaintiff to
28  prove the absence of express prior consent). Yet, this issue is ultimately immaterial

at the class certification phase. *Kristensen*, 12 F. Supp. 3d at 1306 (citing *Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 327 (5th Cir. 2008)). The plaintiff's "burden at the class certification phase is to advance a viable theory employing generalized proof to establish liability with respect to the class involved." *Id.* (internal quotation marks omitted). Accordingly, if the plaintiff has the burden to establish lack of prior express consent, the plaintiff "must prove that lack-of-consent can be addressed with class-wide proof." *Id.* at 1307. Alternatively, if prior express consent is an affirmative defense, the plaintiff must similarly prove for class certification purposes that a defendant's consent defense can be defeated "with class-wide proof." *Id.* "The practical effect is the same: for purposes of class certification, [the plaintiff] must prove that consent, or the lack thereof, can be resolved 'on evidence and theories applicable to the entire class.'" *Id.*; *see also Blair v. CBE Grp., Inc.*, 309 F.R.D. 621, 628 (S.D. Cal. 2015) ("[T]he predominance inquiry in TCPA actions often turns on whether individualized inquiries—rather than generalized proof applicable to the entire class—are required to demonstrate an individual class member's prior express consent.").

Whether the issue of prior express consent can be resolved on evidence and theories applicable to the entire class necessarily depends on the circumstances of each case. For instance, in an action arising out of debt collection phone calls, common evidence did not exist where "an individual review of loan documents and other files related to the underlying debt obligation" would be required to determine whether "each individual gave 'express consent'[.]" *See Versteeg v. Bennett, Deloney & Noyes, P.C.*, 271 F.R.D. 668, 674 (D. Wyo. 2011); *see also, e.g., Gene & Gene LLC*, 541 F.3d at 328–29 (adopting the defendant's argument that because class members' numbers "were collected over time and from a variety of sources," individual inquiries would be necessary as there was "no class-wide proof available to decide consent and only mini-trials [could] determine this issue"); *Blair*, 309 F.R.D. at 630 (concluding predominance not satisfied where the plaintiffs' debts

"arose in varying contexts and in connection with different underlying creditors" and the interaction between the plaintiffs and their creditors varied significantly); *Connelly v. Hilton Grand Vacations Co.*, 294 F.R.D. 574, 578 (S.D. Cal. 2013) (reaching the same conclusion where the defendant obtained the class members' cell phone numbers from a variety of sources).

In contrast, where the defendant obtained the class members' cell phone or fax numbers from a single source or from the class members under very similar circumstances, the issue of consent can potentially be resolved on a classwide basis. *See, e.g.*, *Siding and Insulation Co. v. Beachwood Hair Clinic, Inc.*, 279 F.R.D. 442, 446 (N.D. Ohio 2012). For example, in *Siding and Insulation Co.*, the defendant faxed an advertisement to more than 16,000 recipients via a fax advertising company. *Id.* The advertising company obtained the "recipient fax numbers from another source, InfoUSA." *Id.* Based on these facts, the court found the "question common to the proposed class [i]s thus whether the inclusion of the recipients' fax numbers in the purchased database indicated their consent to receive fax advertisements, and there [a]re therefore no questions of individual consent.'" *Id.* (alteration in original) (quoting *Gene & Gene LLC*, 541 F.3d at 328). Thus, the predominance requirement was satisfied. *Id.*

Similarly, in *Manno v. Healthcare Revenue Recovery Group, LLC*, 289 F.R.D. 674, 688 (S.D. Fla. 2013), all of the class members "went through the same or similar admissions processes, during which they provided their phone numbers." Therefore, although the defendant argued the class members consented "ipso facto" under the TCPA by providing their cell phone numbers during the admissions processes, this issue was suitable for resolution on a classwide basis and did not present individualized issues that would defeat the predominance requirement. 289 F.R.D. at 691; *see also Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 562, 570–71 (W.D. Wash. 2012) (finding predominance satisfied where the defendant provided a marketing company with lists of telephone numbers extracted from a database of

individuals who had purchased pizza at its franchises).

Moreover, where a defendant seeking to defeat class certification argues debtors might have provided consent to debt collection calls but cannot demonstrate a single instance of prior express consent, the issue of consent does not preclude class adjudication. *Meyer*, 707 F.3d at 1042. In *Meyer*, the district court granted a motion for a preliminary injunction and provisional certification of a class action against the defendant debt collection service. *Id.* at 1040–41. On appeal, the defendant argued, among other things, that "individualized issues of consent should have precluded a finding of typicality or commonality because some debtors might have agreed to be contacted at any telephone numbers, even telephone numbers obtained after the original transaction." *Id.* 1042. Yet, the defendant "did not show a single instance where express consent was given before the call was placed." *Id.* Therefore, the Ninth Circuit rejected the defendant's argument. *Id.*; *see also Kristensen*, 12 F. Supp. 3d at 1307 ("[C]ourts should ignore a defendant's argument that proving consent necessitates individualized inquiries in the absence of any evidence that express consent was actually given.").

In this case, Defendants argue the predominance requirement is not satisfied because the issue of prior express consent can be resolved only by the trier of fact after an individualized inquiry into each class member's records and interactions with the original creditor on the account, prior debt collectors, and Defendants. (Opp'n 10:14–17.) Defendants also submit that they have "proffered unrefuted evidence that putative class members can and have provided consent to numerous different entities in numerous different ways" during both "the original debt transaction" and the ensuing debt collection process. (*Id.* 17:10–13.)

Plaintiff, in anticipating and responding to Defendants' claims, advances several arguments to support her position that the issue of consent can be resolved on evidence and theories applicable to the entire class. First, Plaintiff relies on a narrow interpretation of "prior express consent" to argue her class definition eliminates the

need for an individualized inquiry into this issue. (Mot. 2:17–21; 9:27–10:3.) Second, Plaintiff claims that even if some putative class members provided prior express consent to the original creditors on their accounts, that consent cannot transfer to Defendant Allied. (Reply 8:6–9:10.) Third, Plaintiff argues the Court must reject Defendants' claim that consent cannot be resolved on generalized proof because Defendants have not produced evidence of consent here. (Mot. 14:7–15:11, Reply 4:16–6:7.) The Court addresses each of these arguments in turn below.

### 1.    Definition of "Prior Express Consent"

Plaintiff initially seeks to satisfy her burden to demonstrate that the issue of consent can be resolved on a classwide basis by arguing her class definition eliminates the need for an individualized inquiry this issue. (Mot. 2:17–21; 9:27–10:3.) Specifically, Plaintiff claims "consent as an issue will not impede certification" because the "class definition specifically excludes persons who provided their cell phone number in the underlying transaction giving rise to the debt—the only way prior express consent can be created in these circumstances." (Mot. 2:17–21.) In response, Defendants dispute Plaintiff's definition of prior express consent and argue that consent may be provided not only in the underlying transaction giving rise to the debt, but also in communications with the original creditor or as part of the debt collection process. (Opp'n 10:23–11:19.)

Although the TCPA does not define "prior express consent," the Federal Communications Commission ("FCC") has clarified the meaning of the phrase in a series of orders and declaratory rulings. For instance, in a 1992 Report and Order interpreting the TCPA, the FCC found that "[p]ersons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 FCC Rcd. 8752, 8769 (1992). In a more recent Declaratory Ruling and Order, the FCC

determined that "[f]or non-telemarketing and non-advertising calls, express consent can be demonstrated by the called party giving prior express oral or written consent or, in the absence of instructions to the contrary, by giving his or her wireless number to the person initiating the autodialed or prerecorded call." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991–92 (2015). With regard to the interpretive authority of these determinations, "[t]his court is bound by the FCC's interpretations of the TCPA, unless those interpretations are invalidated by a court of appeals." *See Reardon v. Uber Tech., Inc.*, 115 F. Supp. 3d 1090, 1097 (N.D. Cal. 2015) (citing 28 U.S.C. § 2342 *et seq.*).

Plaintiff's theory that Defendants must demonstrate consent was provided when the debt originated is based on her interpretation of a phrase from one of the FCC's rulings. This ruling, issued in 2008, states in part that "prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd. 559, 564 (2008). Plaintiff interprets the phrase "during the transaction that resulted in the debt owed" as meaning a party has provided prior express consent to be called only if the party provided the cell phone number that was called in the initial transaction giving rise to the debt—i.e., consent may be found here only where the party provided the cell phone number called by Allied on a credit card application or comparable document.

The Court does not adopt Plaintiff's interpretation of the FCC's guidance for several reasons. First, the definition of prior express consent for non-telemarketing calls provided in the FCC's more recent ruling indicates that consent is not restricted to providing a cell phone number in the initial transaction between the parties. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991–92 (2015) ("[E]xpress consent can be demonstrated by the called party giving prior express oral or written consent or, in the absence of

instructions to the contrary, by giving his or her wireless number to the person initiating the autodialed or prerecorded call.") Moreover, as the FCC noted in another ruling, "[w]hile the TCPA plainly requires a caller to obtain [prior express] consent, both the text of the TCPA and its legislative history are silent on the method, including by whom, that must be done." *Matter of GroupMe, Inc./Skype Commc'ns S.A.R.L Petition for Expedited Declaratory Ruling Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 29 FCC Rcd. 3442, 3444 (2014).

In addition, when considered in its entirety, the FCC's 2008 ruling relied upon by Plaintiff also supports that prior express consent is not limited to circumstances where the number was provided during the initial transaction. At the outset of the ruling, the FCC states "[i]n this ruling, we clarify that autodialed and prerecorded message calls to wireless numbers that are p*rovided by the called party to a creditor in connection with an existing debt* are permissible as calls made with the 'prior express consent' of the called party." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd. 559, 564 (2008) (emphasis added). This language suggests the proper inquiry is whether the debtor previously provided the cell phone number in connection with the debt being collected on. This interpretation would encompass instances where a debtor provides prior express consent after the initial transaction, such as by providing a debt collector with an updated cell phone number at which he or she can be contacted.

In line with this reasoning, other courts have concluded the FCC's 2008 ruling is "best interpreted as allowing express prior consent to [also] arise from phone numbers provided after the debt was originated." *See, e.g.*, *Haysbert v. Navient Sols., Inc.*, No. CV 15-4144 PSG (EX), 2016 WL 890297, at *8 (C.D. Cal. Mar. 8, 2016) (citing *Hill v. Homeward Residential, Inc.*, 799 F.3d 544, 551 (6th Cir. 2015); *Ebling v. ClearSpring Loan Servs., Inc.*, 106 F. Supp. 3d 1002, 1005 n.3 (D. Minn. 2015)). As one court reasoned, the FCC's guidance should be interpreted as providing "that the debtor has given his consent when he gives his number '*during the transaction*'

that involves the debt (*i.e.*, 'regarding the debt')." *Hill*, 799 F.3d at 551 (quoting 23 FCC Rcd. at 564–65, 567). Therefore, "[t]his language does not change the general definition of express consent; it instead 'emphasize[s]' that creditors can call debtors only 'to recover payment for obligations owed,' not on any topic whatsoever. So it ensures that a debtor who gives his number *outside* the context of the debt has not given his consent to be called regarding the debt." *Id.* at 552 (citing FCC's Letter Brief, *Nigro v. Mercantile Adjustment Bureau, LLC*, 769 F.3d 804 (2nd Cir. 2014), 2014 WL 3612689, at *8–9).

Similarly, the Ninth Circuit in *Meyer* noted that "[p]ursuant to the [2008] FCC ruling, prior express consent is consent to call a particular telephone number in connection with a particular debt that is given before the call in question is placed." 707 F.3d at 1042. The court did not limit its definition of prior express consent to circumstances where the telephone number was given at the origination of the debt. *See id.*; *see also Baisden v. Credit Adjustments, Inc.*, 813 F.3d 338, 349 (6th Cir. 2016). After all, a contrary interpretation "would lead to the odd outcome that a defendant would be protected by a phone number voluntar[il]y given during the origination of the debt, but at risk for a similarly voluntary submission of a phone number later in the process (such as an update if a debtor changed phone numbers)." *Haysbert*, 2016 WL 890297, at *8 (citing *Hill v. Homeward Residential, Inc.*, No. 2:13–CV–388, 2014 WL 4105580, at *6 (S.D. Ohio Aug. 19, 2014); *Moore v. Firstsource Advantage, LLC*, No. 07–CV–770, 2011 WL 4345703, at *10 (W.D.N.Y. Sept. 15, 2011)).

Accordingly, the definition of prior express consent is not limited to circumstances where a party has provided the cell phone number in the underlying transaction giving rise to the debt owed. Rather, prior express consent to future calls at a particular cell phone number may also be given in subsequent communications with a creditor or as part of the debt collection process. Consequently, Plaintiff does not eliminate the need for an inquiry into the issue of consent by excluding from the

1    class those persons that provided the cell phone number called by Allied "during the

2    transaction that resulted in the debt owed." (*See* SAC ¶ 30.) An individualized inquiry

3    would still be necessary to determine whether the class members who meet Plaintiff's

4    definition otherwise provided prior express consent. The Court therefore finds

5    Plaintiff's first argument unpersuasive.

6

7                  **2.      Transfer of Prior Express Consent**

8           Next, Plaintiff claims that even if some putative class members provided prior

9    express consent to the original creditors on their accounts, that consent cannot

10   transfer to Defendant Allied to shield it and the other Defendants from liability.

11   (Reply 8:6–7.) If true, an individualized inquiry into whether class members provided

12   prior express consent to the previous creditors or debt collectors on their accounts

13   would be unnecessary. Plaintiff takes this position in response to Defendants'

14   argument that an individualized review of class members' records will be necessary

15   because Defendants believe they may rely upon express consent provided to previous

16   creditors and their debt collectors. (*See* Opp'n 11:19–12:9, Reply 8:6–7.)

17          The FCC has stated that when a third-party debt collector places calls on behalf

18   of a creditor, those calls "are treated as if the creditor itself placed the call." *In the*

19   *Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,

20   23 FCC Rcd. 559, 565 (2008). Therefore, if the creditor has prior express consent to

21   contact the debtor, the debt collector is shielded from liability under the TCPA. *See*

22   *id.*; *see also, e.g.*, *Chavez v. Advantage Grp.*, 959 F. Supp. 2d 1279, 1283 (D. Colo.

23   2013).

24          In this case, Allied's phone calls to putative class members were made to

25   collect on accounts held by LVNV. (Henderson Decl. ¶ 5; SAC ¶ 8.) Allied's calls

26   are thus analyzed as if LVNV "itself placed the call." *See In the Matter of Rules &*

27   *Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd. 559,

28   565 (2008). Consequently, so long as LVNV had prior express consent to contact the

1   class members, Allied's calls were not prohibited by the TPCA. *See, e.g.*, *id.*; *Chavez*,

2   959 F. Supp. 2d at 1283. The debtors on at least some of the accounts held by LVNV

3   granted prior express consent to their original creditors or those creditors' debt

4   collectors by providing their cell phone numbers in connection with their debts. (*See*

5   Henderson Decl. ¶ 10, Nyman Decl. ¶ 15.) LVNV is not the original creditor on the

6   accounts, however. It purchased the past-due credit accounts from the original

7   creditors or intermediate creditors and debt collectors. The issue here, then, is

8   whether LVNV may possibly rely on consent provided to those previous entities.

9         Generally, whether a defendant may rely on consent granted to another entity

10  depends on the facts specific to the case, including the manner in which consent was

11  provided and the relationship between the defendant and the other entity. To

12  illustrate, one court found that a plaintiff's consent to being called regarding his

13  student loan debt transferred from his lender to (i) the lender's guarantor and (ii) a

14  collector hired by the guarantor to collect the loan. *See Boyd v. Gen. Revenue Corp.*,

15  5 F. Supp. 3d 940, 955 (M.D. Tenn. 2013). In *Boyd*, the plaintiff defaulted on his

16  student loan. *Id.* at 943. His lender Sallie Mae then transferred his debt to the loan's

17  guarantor by submitting a default claim, which the guarantor paid. *Id.* Next, the loan

18  guarantor transferred the plaintiff's account to a debt collector for collections. *Id.* The

19  debt collector placed a series of calls to the plaintiff on behalf of the guarantor,

20  including some calls that contained prerecorded messages. *Id.* at 946, 955.

21        The plaintiff brought a TCPA claim against his lender, the guarantor, and the

22  guarantor's debt collector, and the court granted summary judgment in favor of the

23  defendants. *Boyd*, 5 F. Supp. 3d at 942, 955. In doing so, the court reasoned that the

24  guarantor's debt collector's calls did not violate the TCPA because, among other

25  reasons, the plaintiff had freely provided his information during the loan application

26  process and the collector was calling pursuant to a default that the plaintiff had an

27  obligation to remedy. *See id.* Therefore, although the guarantor was not the original

28  creditor, the guarantor and its debt collector were able to rely on consent granted

– 16 –

during the loan application process. *See id.*; *see also Matter of GroupMe, Inc./Skype Commc'ns S.A.R.L Petition for Expedited Declaratory Ruling Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 29 FCC Rcd. 3442, 3444 (2014) (finding group text messaging service could obtain consumers' "prior express consent through an intermediary, such as the organizer of a group" using the messaging service); *Baird v. Sabre Inc.*, 995 F. Supp. 2d 1100, 1101, 1106–07 (C.D. Cal. 2014) (finding that the plaintiff's consent to be contacted by an airline extended to messages sent by the defendant that had contracted with the airline to provide traveler notification services to passengers).

In contrast, a plaintiff who consents to receiving promotional material from a company's "affiliates and brands" has not consented to being contacted by an unrelated entity regarding an unrelated brand of products. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009). In *Satterfield*, the plaintiff became a registered user of "Nextones.com" at the request of her son to receive a free ringtone. *Id.* at 949. To register, the plaintiff completed an online form that contained a check box followed by:

> Yes! I would like to receive promotions from Nextones affiliates and brands. Please note, that by declining you may not be eligible for our FREE content.
>
> By checking Submit, you agree that you have **read and agreed** to the **Terms and Conditions**.

*Id.* The plaintiff later received a text message from the defendant, Simon & Schuster, as part of its promotional campaign for the Stephen King novel *Cell*. *Id.* Simon & Schuster had outsourced its promotional campaign to another entity, which had obtained a list of 100,000 individuals' cell phone numbers from yet another entity that "was Nextones' exclusive agent for licensing the numbers of Nextones subscribers." *Id.*

//

– 17 –

The plaintiff filed a putative class action alleging Simon & Schuster violated the TCPA because it was responsible for the transmission of the unsolicited text message to the plaintiff's and other class members' cell phones. *Satterfield*, 569 F.3d at 950. The district court granted summary judgment based on the plaintiff expressly consenting to receiving the text message. *Id.* On appeal, the Ninth Circuit applied the provision in the Nextones terms and conditions agreed to by the plaintiff to determine whether Simon & Schuster had prior express consent to send the promotional text message. *Id.* at 955. The court noted the "record confirms that Nextones neither owns nor controls Simon & Schuster, nor can Nextones be considered a Simon & Schuster subsidiary. In fact, the record shows no direct contractual relationship between Nextones and Simon & Schuster." *Id.* at 955. The court also concluded Simon & Schuster was not a "Nextones brand." *Id.* Accordingly, it reversed the grant of summary judgment because Simon & Schuster lacked prior express consent to send the text message to the plaintiff. *Id.*

Here, the Court does not accept Plaintiff's position that any consent provided to putative class members' original creditors or these creditors' debt collectors cannot possibly be relied upon by Defendants. By purchasing the class members' past-due credit accounts, LVNV stepped into the shoes of their original creditors. It then, through Resurgent, hired a debt collector, Allied, to attempt to collect on the accounts. Thus, class members were contacted on LVNV's behalf "only to recover payment for obligations owed, not on any topic whatsoever." *See Hill*, 799 F.3d at 552 (internal quotation marks omitted). The principle of *Boyd*, where the defendant entities were able to rely on the plaintiff's consent to be contacted regarding his debt, despite not being the original creditor, applies here. LVNV is similarly seeking to rely on class members' prior consent to be contacted regarding debts they owe—on accounts now owned by LVNV—despite not being the original creditor. This comparison suggests it is possible that LVNV could rely on consent granted to class

members' previous creditors and their debt collectors.[1]

Moreover, the Ninth Circuit's decision in *Satterfield*, which Plaintiff relies on, is distinguishable. As summarized above, the Ninth Circuit reached its conclusion in *Satterfield* by interpreting and applying the consent provision contained in the terms and conditions agreed to by the plaintiff. 569 F.3d at 950. Because that provision stated only "Nextones affiliates and brands" could contact the plaintiff, a company with no contractual relationship with Nextones seeking to promote an unrelated product did not have consent to contact the plaintiff on her cell phone. *Id.* Here, in contrast, a debt collector is contacting parties regarding a debt they owe to a creditor that has purchased their accounts and assumed the position of their original creditors. Although factually distinguishable, *Satterfield* demonstrates the language of the credit card agreement, account terms and conditions, or similar document underlying particular class member's debts may influence this inquiry. This agreement may expressly provide the creditor has the right to contact the debtor on a cell phone number provided by the debtor. *See, e.g.*, *Haysbert*, 2016 WL 890297, at *1 (analyzing federal student loan application and promissory note provision that provided "I expressly consent and authorize you, your affiliates or agents, and Sallie Mae, Inc., and its affiliates or agents, to communicate with me, in connection with the application or my loan . . . using any phone number . . . that I provided in the application . . . ."). Further, if there is this type of provision in an agreement, and the agreement is assigned to a new creditor like LVNV, this entity likely has the right to rely on the provision. *See, e.g.*, Restatement (Second) of Contracts § 317 (providing a contractual right is generally assignable unless one of three exceptions applies).

Accordingly, Defendants may be able to rely upon consent granted to class members' original creditors or those creditors' debt collectors. The manner in which

---

[1] The Court recognizes that the guarantor in *Boyd*, unlike LVNV, was involved in the initial credit transaction because it guaranteed the plaintiff's loan. *See* 5 F. Supp. 3d at 943. It nevertheless finds this comparison valuable because the guarantor in *Boyd* and LVNV are similarly not the original creditor in their respective cases.

13cv1383

class members previously provided consent, including whether they provided express consent in a credit card agreement or similar item, would influence this issue. The Court consequently does not adopt Plaintiff's claim that Defendants cannot possibly rely on consent provided to class members' original creditors or those creditors' debt collectors.

### 3. The Need for Individualized Inquiries into Prior Express Consent

Last, Plaintiff argues Defendants have not produced any evidence of prior express consent to support their argument that individualized inquiries will be necessary to resolve the issue of consent; therefore, in Plaintiff's view, the Court must reject Defendants' claim that predominance is not satisfied. (Mot. 14:7–15:11, Reply 4:16–6:7.) In response, Defendants argue (1) they have produced evidence of consent and (2) the facts of this case establish that individualized inquiries into the issue of consent will predominate over any common issues. (Opp'n 1:26–2:25, 13:18–17:13.)

The Court finds Defendants have adequately supported their position that predominance is not satisfied because individualized inquiries into the issue of prior express consent will be necessary. This case is unlike *Meyer* where, as discussed above, the defendant unsuccessfully argued—without any evidence of consent to support its position—that class certification was inappropriate because "some debtors might have agreed to be contacted at any telephone number, even telephone numbers obtained after the original transaction." 707 F.3d at 1042. Here, Defendants demonstrate there is evidence of at least some debtors providing prior express consent during the initial transaction or the debt collection process. Defendants' records relating to a particular account and efforts to collect on the account "often include one or more telephone numbers for the debtor . . . . including numbers identified as [a] cell phone number for the debtor." (Nyman Decl. ¶ 15.) "These records include, for example, credit card applications or credit agreement[s] containing the debtor's

telephone number . . . and servicing or collection records reflecting that the debtor provided his or her telephone number over the phone to the original creditor and/or a prior debt collector." (*Id.*; *see also* Henderson Decl. ¶ 10 (noting among Defendants' account records are "credit applications and other records that contain telephone numbers, including numbers identified as cell phones").) Thus, for at least some of the debtors Allied was contacting, these debtors had previously provided their cell phone numbers in connection with their debt, thereby evidencing their consent to be contacted on those numbers regarding their debt.

Further, the evidence demonstrates that at least some class members also directly provided express consent to Allied to be contacted in the future as part of the collections process. Defendants' expert sampled Allied's records within the scope of the putative class and identified twelve accounts where Allied called cell phone numbers associated with the accounts during the class period. (Sponsler Decl. ¶¶ 16–17.) For each account identified, an Operations Manager at Allied "reviewed Allied's records" and confirmed that "each relates to an active account being collected by Allied on behalf of Resurgent." (Nyman Decl. ¶ 28.) The employee then, for each account, "manually reviewed the debtor's records in Allied's system." (*Id.*) The employee confirmed for each of the fifteen cell phone numbers that the debtor "had agreed to receive subsequent calls from Allied on a cellular number" by "listening to the call recordings of their conversations or reviewing the account notes." (*Id.*) Thus, in addition to there being evidence of Allied likely having consent to contact at least some debtors on LVNV's accounts to begin with, there is also evidence of debtors granting consent directly to Allied during the collections process to make future calls.

Moreover, in addition to there being at least some evidence of prior express consent here, the facts of this case demonstrate that individualized inquiries into the issue of consent will indeed predominate over common issues. The accounts held by LVNV involve credit transactions "between debtors and hundreds, if not more, of different original creditors in a variety of industries . . . ." (Nyman Decl. ¶ 16.) That

these debts "arose in varying contexts and in connection with different creditors" underscores "the need for individualized inquiries to determine whether a particular class member provided express consent to receive phone calls from" Allied. *See Blair*, 309 F.R.D. at 630. This fact also distinguishes this case from those where the plaintiff has demonstrated the defendants acquired the numbers they called from a single source or a similar application process. *See Siding and Insulation Co.*, 279 F.R.D. at 446; *Manno*, 289 F.R.D. at 688; *Agne*, 286 F.R.D. at 562. Whereas the courts in those cases reasoned that the issue of consent did not preclude class treatment because a single source of phone numbers or a uniform application process allowed for resolution of this issue on a classwide basis, there is no such possibility here. Further, an individualized review of Defendants' records and possibly those records still in the possession of the original creditor or any prior owner of a debtor's account will be necessary to determine conclusively whether these records contain the debtor's cell phone number. (Henderson Decl. ¶ 16; Nyman Decl. ¶ 29.) This fact also demonstrates common issues will not predominate.[2] *See Versteeg*, 271 F.R.D. at 674 (concluding predominance not satisfied where "an individual review of loan documents and other files related to the underlying debt obligation" will be required to determine whether "each individual gave 'express consent'"). Accordingly, the Court rejects Plaintiff's final argument that Defendants have not sufficiently supported their claim that individualized inquiries into consent will predominate.

Ultimately, the Court finds Plaintiff has not demonstrated the issue of consent can be resolved on evidence and theories applicable to the entire class. Plaintiff seeks to avoid this issue by arguing for a narrow interpretation of prior express consent and that consent can never transfer between entities in these circumstances, but these

---

[2] As discussed above, Plaintiff's proposed class definition, which excludes all of the debtors who provided their cell phone numbers in the initial transactions giving rise to their debts, does not resolve this concern. An individualized review of the account and collection records would still be necessary not only to ascertain the debtors who satisfy Plaintiff's class definition, but also to determine whether class members who did not initially provide a cell phone number nevertheless provided prior express consent as part of the collections process.

arguments are unpersuasive. Moreover, there is at least some evidence of prior express consent here, and the evidence demonstrates that individualized inquiries will be necessary to determine whether particular class members gave prior express consent. The Court finds these individualized inquiries into the issue of prior express consent will overwhelm the issues common among the putative class members. Thus, a class cannot be certified because Rule 23(b)(3)'s predominance requirement is not satisfied.

## IV.   CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion for Class Certification and Order Appointing Class Counsel (ECF No. 103).

**IT IS SO ORDERED.**

**DATED:  June 22, 2016**

**Hon. Cynthia Bashant**
**United States District Judge**